IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

```
-------------------------------X
SANDRA KAY SIMON BY HER;        :   CASE NO.:
KALMAN GLENN SIMON BY HIM;      :
CONJUGAL PARTNERSHIP CONSTITUTED:
BETWEEN SANDRA KAY SIMON AND    :   CASE NO.:
KALMAN GLENN SIMON;             :
COMMUNITY OF GOODS CONSTITUTED  :
BETWEEN SANDRA KAY              :
SIMON AND KALMAN GLENN SIMON    :
COMMUNITY PROPERTY CONSTITUTED  :
BETWEEN SANDRA KAY              :
SIMON AND KALMAN GLENN SIMON    :
                                :
Plaintiffs,                     :   PLAINTIFFS DEMAND TRIAL
                                :
                                :   BY JURY
              -vs.-             :
                                :
AEROSTAR AIRPORT HOLDINGS, LLC; :
PRIME JANITORIAL SERVICE, CORP.;:
MAPFRE PRAICO INSURANCE COMPANY;:
ROBERT DOE AND MARY DOE;        :
Y AND Z INSURANCE COMPANIES;    :
JOHN DOE, MARK DOE, JOE DOE     :
AND CLARK DOE                   :
                                :
Defendants,                     :
--------------------------------X
```

**COMPLAINT**

**TO THE HONORABLE COURT:**

　　**COME NOW,** plaintiffs through their undersigned attorney and very respectfully state, allege and pray:

## I. FEDERAL JURISDICTION AND VENUE

1.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 over state law claims under Articles 1540, 1539, and 1536 of the Civil Code of Puerto Rico of 2020 over all the plaintiffs; in that there is complete diversity of citizenship among the parties and the amount in controversy, exclusive of interest and costs, which exceeds $75,000 Dollars. Also, this Court has supplemental jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1367; regarding the conjugal partnership, community of goods, community property constituted between Sandra Kay Simon and Kalman Glenn Simon; and Kalman Glenn Simon by him, over state law claims under Articles 1540, 1539, and 1536 of the Civil Code of Puerto Rico of the year 2020.

2.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) (1) and (2) in that the events giving rise to the claim arose in this District.

## II. PARTIES

3.   Plaintiffs, SANDRA KAY SIMON BY HER, KALMAN GLENN SIMON BY HIM, CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN SANDRA KAY SIMON AND KALMAN GLENN SIMON; COMMUNITY OF GOODS CONSTITUTED BETWEEN SANDRA KAY SIMON AND KALMAN GLENN SIMON, and COMMUNITY PROPERTY CONSTITUTED BETWEEN SANDRA KAY SIMON AND KALMAN GLENN SIMON, are

2

citizens of the State of Colorado, residing and with intention to live at Castle Rock, Colorado. At the time this complaint is filed plaintiffs have the intention to have their domicile and citizenship within the State of Colorado.

4.     Defendant, Aerostar Airport Holdings, LLC, is a legal entity organized under the laws and with its principal place of business in the Commonwealth of Puerto Rico.

5.     Defendant, Prime Janitorial Service, Corp., is a legal entity organized under the laws of Puerto Rico, and with its principal place of business in the Commonwealth of Puerto Rico.

6.     Defendant, MAPFRE PRAICO Insurance Company, is an insurance company that was organized under the laws and with its principal place of business in the Commonwealth of Puerto Rico. It has an insurance policy that covers the facts of this case.

6.     Defendants, X, Y and Z INSURANCE COMPANIES are the fictitious name of the insurance company whose place of business is in a state or foreign country other than the State of Colorado. They had at all relevant times an insurance policy to cover the damages alleged in the Complaint. They are designated with these names because their true identity is not known at the present time.

7.     Defendants, Robert Doe and Mary Doe; are citizens of the United States but residents of a state other than the State of Colorado. They are designated with these names because their true identities are not known at the present time because they are

3

spouses and conjugal partnerships constituted with any of the defendants.

8.   Defendants, John and Mark Doe are citizens of the United States but residents of a state other than the State of Colorado. They are designated with these names because their true identities are not known at the present time.

9.   Defendants, Joe DOE and Clark Doe, are corporations organized under the laws and with their principal place of business in a state other than the State of Colorado. They are designated with these names because their true identities are not known at the present time.

### III. FACTS

10.   Defendant, Aerostar Airport Holdings, LLC owned, managed, operated, maintained, and/or controlled the area in the Airport Luis Muñoz Marín in Carolina, Puerto Rico where Sandra Kay Simon slipped and fell.

11.   At all times, Plaintiff Sandra Kay Simon slipped and fell when she was lawfully at Airport Luis Muñoz Marín.

12.   On May 16, 2023, at 12:30 AM, Sandra Kay Simon flew into the International Airport Luis Muñoz Marín and came out of her flight in the morning around 12:30 AM. As she was walking, she slipped and fell on the recently mopped floor in Puerto Rico's airport.

13.   Sandra Kay Simon just arrived on a flight of United Airlines, flight number 1914, Gate B-6.

14.   Just after Sandra Kay Simon came out of Gate B-6(in front of Gate B-3), terminal B, she started walking near other gates, and just when she moved to the area in the hall, she slipped and fell. The floor was very slippery. She had the intention to go to the baggage claim area.   Behind her it was a store with a pink sign, closed.

15.   Immediately after she slipped and fell near the slippery floor, she saw two employees standing near the area where she fell, and two cleaning carts with the employees. Defendants knew or should have known of the dangerous slippery floor.

16.   The floor was mopped by defendant's maintenance employees, where she slipped and fell. Defendants knew or should have known of the dangerous slippery floor.

17.   Sandra Kay Simon never knew that the floor was wet before she fell, and no signs were placed before the accident that would warn her of the wet floor.

18.   One of the maintenance employees was about 10 feet away from where she slipped and fell on her right side. The second maintenance employee was about fifth teen feet away from where she fell on her right side.   Defendants knew or should have known of the dangerous, unsafe or hazardous slippery floor.

19.  One of the maintenance employees put up a sign after Sandra Kay Simon slipped and fell, that warned that the floor was wet exactly where she fell.

20.  Then they kept moping the floor in the area where they had the carts after her accident. Then they kept mopping the floor in the hall, which was not the exact area where she slipped and fell, but near.

21.  Sandra Kay Simon was taken from the Airport in an Ambulance with her ex-coworkers to help Eric (he stayed with her at the airport and went with her to the hospital.

22.  X-ray showed that her kneecap has been broken into two pieces.

23.  She took a plane bank to Colorado. Where she had an Orthopedic Surgeon consultation on 5/17/2023 at 9:15 am. Then a surgery was scheduled for Next Thursday 25th.

24. The maintenance employees of the defendants could have foreseen that the wet floor could have injured Sandra Kay Simon.

25.  Defendants were negligent because did not warn Sandra Kay Simon of the wet slippery floor, and because they created the slippery floor when they mopped it.

26.  Defendants financially benefited from the operation, maintenance, and ownership of the airport.

27.  Defendants had knowledge or should have known that the floor was slippery because they mopped the floor before the

6

accident and also because they were very close to the wet slippery floor.

28.   Plaintiffs suffered damage due to the acts and/or omissions of the maintenance employees at the airport.

29.   Upon information and belief, defendants by conduct of their employees failed to repair, clean and maintain, the subject floor, or otherwise ensure that it was in a reasonably condition for the use by its guests or invitee.

30.   At all times, material hereto Defendants owed a duty to maintain its premises, in a reasonably safe condition, to correct any dangerous conditions that they knew or should have reasonable known of through the use of reasonable care, and to warn of any dangerous conditions that Defendants knew or should have known of, and which were not apparent to Plaintiff Sandra Kay Simon.

31.   Defendants breached the aforementioned duties by:

   a.   Negligently failing to maintain the floor in order to eliminate the dangerous, unsafe or hazardous condition.

   b.   Negligently inspecting the floor and failed to identify the potential hazards, unsafe and dangerous slippery floor; because it was foreseeable to a reasonable prudent man that the wet floor could cause Sandra Kay Simon's accident.

   c.   Negligently failing to develop inspection and maintenance protocol to identify the potential hazards or problems, thereby allowing the same to become unsafe.

d.  Negligently failing to warn plaintiff Sandra
    Kay Simon regarding the slippery floor, when
    Defendants knew or should have known that it
    was slippery.

e.  Failing to exercise due care with respect to
    matters alleged in this Complaint.

## V. DAMAGES

32.  As a direct and proximate result, of the negligence of
Defendants, Plaintiffs, Sandy Kay Simon and Kalman Glenn Simon,
suffered the following damages. Sandy Kay Simon had to travel back
to the mainland which created significant anxiety. Sandy Kay
Simon's leg had to be carried manually at just the right angle or
she would experience severe pain.  As her leg was immobilized and
had to be held for her to raise or lower, she was not able to use
the restrooms on the plane (two flights to get home; one was four+
hours, the next almost 3 hours).

33.   As a direct and proximate result of the negligence of
Defendants, Plaintiffs, Sandy Kay Simon and Kalman Glenn Simon,
suffered the following damages. Sandy Kay Simon had to travel all
day before the accident, spent all night and ½ the next day in the
hospital, traveled the rest of that day to get back home through
two airports in the same clothes but with her pants cut open to
accommodate the splint. She did not smell very nice or look good

at all; it was quite embarrassing as she had only been at her job for about 6 months and only met her boss once who then graciously helped her get home.

34.   As a direct and proximate result of the negligence of Defendants, all Plaintiffs suffered the following damages. Complete loss of mobility for 2 months (May 16 through mid-July 2023); plus, limited ability for 1 month (mid-July 2023 to mid-August 2023). While still able to work from home remotely, she was unable to travel for over 3 months to Puerto Rico to be face to face with her client. This impacted business development – the ability to "walk the halls," sit with the client, be available for opportunities because they didn't see her. Also impacted delivery as she could not see how the team was working together and distinguish body language in discussions with client to determine whether changes or improvements were necessary. These things may have contributed lost business which impacted on her bonus and profit sharing potential.

35.   As a direct and proximate result of the negligence of Defendants, all Plaintiffs suffered the following damages. Sandra Kay Simon was unable to attend industry conferences, impacting my personal brand, meeting new potential clients and losing potential business opportunities.

36.  As a direct and proximate result, of the negligence of Defendants, Kalman Glenn Simon and the other plaintiffs suffered the following damages. Kalman Glenn Simon was unable to travel for work for the first couple of months of recovery as Sandra Kay Simon required assistance with her care and getting around the house Husband (Kalman Glenn Simon) ending up leaving for work late every day so he could make sure she had everything she needed for the day: Breakfast, lunch and ice packs ready to go. Kalman Glenn Simon constantly suffered emotionally due to the damages Sandra Kay Simon suffered at the Airport Muñoz Marín.

37.  As a direct and proximate result, of the negligence of Defendants, Sandra Kay Simon and the other plaintiffs suffered the following damages. She was unable to lift packages and items off the floor / picking items up to get away from the dogs. For the first month, could not use the stairs to get up to the bedroom or bathroom for a shower – had to sleep on the couch and wash her body and hair in the kitchen sink. No manicures and Pedicures and personal grooming for a while. Kalman Glenn Simon, her husband, helped; but only so much he can do.

38.  As a direct and proximate result of the negligence of Defendants, all plaintiffs suffered the following damages. Plaintiffs were unable to use their boat most of the summer (May through mid-July 2023) as she could not enter and exit the boat safely. The cost of the dockage was $645 / month (annual contract),

so it was a $1290 impact (paying for a slip that plaintiffs were unable to use).

39.  As a direct and proximate result, of the negligence of Defendants, Sandra Kay Simon suffered the following damages. She lost the last few months of getting to spend time with her dad before he passed away. Her Dad became ill in March 2023. Both spent Mother's Day (the day before Sandra Kay Simon's accident) with in Arizona as a family as we knew he was not feeling excellent and aging. Sandra Kay Simon used to visit him frequently to spend time with him. Because of her knee injury at the Airport Muñoz Marín, she was not able to see him from May through August 2023. He passed away on September 3rd, 2023. Sandra Kay Simon had originally had plans to spend two weeks with her father in June 2023 while Kalman Kay Simon was in Arizona for work. Sandra Kay Simon did not get to do that because she could not travel, and her husband couldn't go because Sandra Kay Simon needed so much care and support in those early months of her recovery.

40.  As a direct and proximate result of the negligence of Defendants, Sandra Kay Simon suffered the following damages. She was unable to engage in any normal summer activities – camping, mountain biking, paddle boarding, jet skiing, water skiing, golfing. Quality of life for Spring, Summer and Fall of 2023 severely impacted (eliminated).

41.  As a direct and proximate result of the negligence of Defendants, plaintiffs suffered the following damages. Sandra Kay Simon typically walked the dogs daily and was unable to do so. She had to hire someone to do that for her at $15 / day – total cost was $855. Plaintiffs claim economic damages.

42.  As a direct and proximate result, of the negligence of Defendants, Sandra Kay Simon and Kalman Glenn Simon suffered the following damages. Both had limited ability to be intimate with. No sex the first 2 months; limited sex for next month. Typically, were intimate 4-5 times per week before the accident.

43.  As a direct and proximate result, of the negligence of Defendants, Sandra Kay Simon and Kalman Glenn Simon suffered the following damages. While Sandra Kay Simon did not gain weight, she lost significant muscle mass, which unfortunately was replaced by fat. Her self-confidence – have always been very self-reliant and it was difficult and somewhat embarrassing for her to have to rely completely on others for her care, feeding, etc.

44.  As a direct and proximate result, of the negligence of Defendants, Sandra Kay Simon and Kalman Glenn Simon suffered the following damages. Sandra Kay Simon was totally reliant on others for driving and getting her around in a wheelchair. She was unable to play with her grandkids; and not able to go to their end of school year events. Grandkids were scared to hold her and hug her and or come close as they were worried, they would hit her knee

and hurt her. She had difficulty sleeping because of the knee brace; could only sleep on her back. Restless. Did not get nearly enough rest. Her husband had to do all the yardwork. Both usually enjoy doing it together, but she was not able to do any of it, so it all feels on him.

45. As a direct and proximate result, of the negligence of Defendants, Sandra Kay Simon and Kalman Glenn Simon suffered the following damages. She continued loss of mobility until the end of therapy. Sandra Kay Simon continued to have difficulty sleeping for several months; required pillows and different positions because the knee would get stiff, and the pain would wake her up. She couldn't sleep on her side because of the pressure from the other leg on the knee.

46. As a direct and proximate result, of the negligence of Defendants, Sandra Kay Simon, Kalman Glenn Simon and all plaintiffs suffered the following damages. Prior to the injury, both had planned a family trip to Australia for New Years to scuba dive as a family at the Great Barrier Reef. Because of her injury, both had to postpone our dive certification until she recovered. We did not have time to do our open water certification prior to having to leave on the trip. Rules are quite different in Australia for certification, and we encountered many roadblocks. Had to find doctors for medical exams and change dive bookings which resulted in an additional cost of $4000. We were unable to find a diving

doctor given the short notice and the holidays so her husband, due to medical reasons, ended up not being allowed to dive at all. Sandra Kay Simon was only allowed to do an excursion dive and not allowed to be certified. Only their two boys were able to achieve the goal. Had Sandra not been injured, we all could have been certified in the US prior to going to Australia. So, we were unable to fulfill our dream of all being able to scuba dive the Great Barrier Reef together.

47.   As a direct and proximate result of the negligence of Defendants, Sandra Kay Simon suffered the following damages. She has general challenges with completing daily tasks – things just take her a bit longer now than they used to. She does not walk as fast as before the accident, running scares her. She cannot lift and carry as much as before.

48.   As a direct and proximate result of the negligence of Defendants, Sandra Kay Simon suffered the following damages. Her doctors have stated to her that she will experience arthritis. She may require a second surgery in the future to remove the hardware from the knee if it begins to cause pain. If not removed, will have permanent hardware in the knee. The wire can be felt. Care must be taken when kneeling to avoid pain in knee from wire.

49.   As a direct and proximate result of the negligence of Defendants, Sandra Kay Simon suffered the following damages. She has permanent 5 ½" scar on her knee. Visible when wearing business

14

suits, skirts, shorts, bathing suits, etc. She requires daily exercise, or the knee will stiffen and be sore even to walk. She has difficulty sitting in one position more than 30-45 mins – knee gets stiff and painful. While working back into normal activities, the knee will still have pain, swell and be sore requiring rest and ice. It is very difficult for her to use the stairs.

50.  As a direct and proximate result, of the negligence of Defendants, Sandra Kay Simon suffered the following damages. She has significant post-traumatic stress disorder when encountering any wet or shiny surface. Cause on all tile and epoxy surfaces. Need to either walk very slowly or hold on to someone. She is very anxious to walk down anything with a slope as she worries about slipping and falling, and about pain in her knee.

51.  As a direct and proximate result of the negligence of Defendants, Sandra Kay Simon suffered the following damages. She is taking a long time to replace lost muscle mass and it is more difficult to maintain / lose weight as she is still not quite able to be as active as she once was.

52.  As a direct and proximate result of the negligence of Defendants, Sandra Kay Simon and Kalman Glenn Simon suffered the following damages. He used to like to kid around and scare Sandra and tickle her; not anymore afraid the sudden movements would hurt her knee. He is not hesitant to play around too much, as he feels when he touches her the knee could cause discomfort to Sandra.

15

53.  As a direct and proximate result, of the negligence of Defendants, Sandra Kay Simon and Kalman Glenn Simon suffered the following damages. Kalman Glenn feels during lovemaking that both are somewhat limited as he is anxious as to what will cause her discomfort.

54.  As a direct and proximate result, of the negligence of Defendants, Sandra Kay Simon Kalman Glenn Simon suffered the following damages. Kalman Glenn is asked to massage her knee; and that causes him much anxiety for fear of the way it feels to him the scar tissue, that the wires can be felt and his uneasiness of hurting her.

55.  As a direct and proximate result, of the negligence of Defendants, Sandra Kay Simon suffered the following damages. As she returned to her normal activities, it is not the same. Movements are slower, she has less agility, less strength; still very timid because she is worried that will hurt herself.

56.  As a direct and proximate result of the negligence of Defendants, Sandra Kay Simon suffered the following damages. She has not attempted some of the activities she was accustomed to as her due to anxiety about whether she will be able to still do them or not. She certainly does not feel she will be able to do them like she used to (i.e., biking, mountain biking, waterskiing, wakeboarding).

57.  As a direct and proximate result of the negligence of Defendants, Sandra Kay Simon suffered the following damages. Her knee wobbles occasionally and she feels like it gives out. It gives her stress.

58.  As a direct and proximate result, of the negligence of Defendants, Sandra Kay Simon and all plaintiffs suffered bodily injury at the following areas: knee and arm, resulting in pain and suffering, disability, impairment, loss of capacity for the enjoyment of life, impairment in her knee, expenses of hospitalizations, expenses with doctors, expenses in medications, expenses in medical and/or treatment, expenses in one surgery, loss of earnings, loss of ability to earn money, plaintiffs lost income for a period of time. Sandra Kay Simon has received more than 17 therapies, one surgery, has two screws, and a wire in her knee. Plaintiffs have a debt with the workers comp for an amount of $17,000.00 or more, which needs to be paid from the proceeds of this legal case; and they are claiming that amount. Their losses are either permanent in nature and/or continuing and the Plaintiffs will suffer the losses in the future. The injury consists in whole or in part of significant and permanent loss of an important bodily function, for example in her knee, loss of an important bodily function in her knee, and a permanent injury within a reasonable degree of medical probability. Plaintiff Sandra Kay Simon is claiming her permanent impairment and/or impediment that she has

developed in her knee, and other areas. Plaintiffs are claiming their loss of income, future loss of income, past and future medical expenses economic damages. Plaintiffs are claiming damages caused due to the over 17 therapies or more received by Sandra Kay Simon. Furthermore, plaintiffs Sandra Kay Simon and Kalman Glenn Simon have suffered continuous emotional damages, pain and suffering damages during the whole year after the accident, and will continue. Sandra Kay Simon lost sleep, mode changes, suffers from anxiety, has flash back, and other emotional damages. Plaintiffs claim all those damages (see paragraphs 24 to 50 of this complaint) for the amount of four million dollars ($4,000,000.00).

## VI. CAUSES OF ACTION

59. The First Circuit of Boston in the case of Vázquez-Filippetti, vs Banco Popular, 504 F3d 43, 50(2007); states:

> "Torres, 233 F.Supp.2d at 278(internal citations omitted). **Cases premised on the existence of a dangerous condition often arise from a slip and fall, caused by a wet or slippery floor,** and involve a claim that the business owner was negligent in permitting the condition to remain **because it is foreseeable that a wet floor is likely to cause injury…."**

60. The slippery wet floor was foreseeable to cause the accident of Sandra Kay Simon. The facts stated before established

breach of duty, the proximate or adequate cause of plaintiffs'
damages. Those facts established liability under articles 1540,
1539, and 1536 of the Civil Code of Puerto Rico of 2020.

61. In Arthur Jiménez v. Desarrolladora del Norte S en C,
S.E., 2010 WL 3087497, at pages 3-4, in a slip copy of the U.S.
District Court for the District of Puerto Rico; states:

> "….Thus, in order to prevail in a general tort
> claim under Puerto Rico law, a party must
> establish the following elements: "(1)
> evidence of physical or emotional injury, (2)
> a negligent or intentional act or omission
> (the breach of duty element), and (3) a
> sufficient causal nexus between the injury and
> defendant's act or omission (in other words,
> proximate cause)." *Vazquez-Filippetti v.
> Banco Popular de Puerto Rico,* 504 F.3d 43, 49
> (1st. Cir. 2007) (*citing Torres v. Kmart Corp.*
> 233 F.Supp.2d 273, 277-78(D.P.R.2002)).
>
> ………..
>
> 'As is true in most jurisdictions,
> foreseeability is a central issue in these
> cases, as it is an element of both breach of
> duty and proximate cause'. *Vazquez-Filippetti
> v. Banco Popular de Puerto Rico,* 504 F.3d 43,
> 49 (1st Cir.2007)(internal citations
> omitted). *See also Marshall v. Perez-Arzuaga,*
> 828 F.2d 845, 847 (1st Cir. 1987). ………………..
> *4 "[Proximate cause is also defined in terms
> of foreseeability." *Malavé-Félix v. Volvo Car
> Corp.,* 946 F.2d 967, 971 (1st Cir. 1991).
> "Once a plaintiff has demonstrated that the
> defendant was negligent (meaning that the
> defendant breached its duty of care), [he/she]
> must then demonstrate that the defendant's
> negligence was the proximate cause of her
> injuries." *Vazquez-Filippetti,* 504 F.3d at
> 49n. 6. "A defendant's actions may only be the
> proximate cause of a plaintiff's injuries if
> they in fact caused the injuries and the

defendant could have reasonably foreseen that
the injuries (or related harms) would result
from his actions." *Id.* (internal citations
omitted).
"In particular, claims based on allegedly
dangerous conditions on commercial property
("premises liability claims") require a
showing that the defendant knew of or should
have foreseen the risks created by the
condition." *Id.* at 50.
…………………………………..
…………………………………..
…………………………………..
(in slip and fall cases under Puerto Rico law,
liability attaches to the owner of a business
when the dangerous condition was known or
should have been known to the owner)."


62.   Edward F. Kaden v. Wyndham El Conquistador Resort &
Country Club, 2005 WL 1949694, at page 6, not reported in F.Sup.2d,
U.S. District Court, District of Puerto Rico; states:

'"In Puerto Rico, an owner of a commercial
establishment is potentially liable for all
injuries occurring in areas where it has
retained control." *Bou Maldonado,* 2001 WL
1636768, at *3 (*citing Cotto v. C.M. Insurance
Co.*, 116 D.P.R. 644 (1985); *Aponte Betancourt
v. Melendez,* 87 D.P.R. 619 (1963); *Goose v.
Hilton Hotels,* 79 D.P.R. 494 (1956)). …….

This duty of care requires that commercial
establishments "take the necessary
precautions or … adopt the necessary security
measures to preserve the safety of their
costumer." *Bou Maldonado,* 2001 WL 1636768, at
*3. Nevertheless, commercial establishments
are not "liable for events that cannot be
foreseen, or for those that, having been
foreseen, are inevitable." *Id.* In sum,
plaintiffs must prove that the injury was
reasonably foreseeable and that it could have
been avoided had defendant acted with care.
*See Woods-Leber,* 124 F.3d at 51."

63.   In Isabelita Mas, v. United States of America, 984 F.2d 527, 529-530 (1st Cir. 1993); states:

> "……the Court incorporated language of actual and constructive knowledge in its opinion in *Cotto v. Consolidated Mutual Insurance Co.,* 116 D.P.R. 644 (1985). …………………..
> …………………..
> As we find *Cotto* to reflect the current state of the law in Puerto Rico, we agree with the district court on the result of this case. Section 5141 requires, as an element, an affirmative showing by the plaintiff that the defendant was negligent.   This showing, in turn, requires a demonstration that the defendant has either actual or constructive knowledge or a dangerous condition…..''

64.   In the case of Marquez v. Casa de España de Puerto Rico, 59 F.Supp.3d 409, 414 **at footnote 1**(D. Puerto Rico 2014); expresses:

> "**it is the failure to correct, in the exercise of due care, a known hazardous condition** or one of which the [property owner], in the exercise of due care, should be aware, **or the failure to effectively warn invitees of its presence,** that constitutes fault or negligence."

65.   Defendants breached of all the prior duties caused the damages of the plaintiffs.

66.   Pursuant to the Puerto Rico Insurance Code a casualty or liability insurance carrier, is independently liable in a direct action to the plaintiff, for any negligence or fault or condition insured against, up to the merits of liability of the insurance contract.

67.   Plaintiffs demand a jury trial.

**WHEREFORE,** plaintiffs respectfully request that judgment be granted in the favor of them, and against the Defendants jointly and severally as follows:

(a) Five Million ($4,000,000.00) Dollars;

(b) Awarding costs, disbursements and attorney's fees to Plaintiffs; and

(c) Such other relief as this Court may deem just and proper.

In San Juan, Puerto Rico, this 28th day of April 2024.

s/Glenn Carl James
Glenn Carl James
USDC- 207,706
JAMES LAW OFFICES
PMB 501
1353 Ave. Luis Vigoreaux
GUAYNABO, PR 00966-2700
Tel. (787)616-2885
E-mail:
glenncarljameslawoffices@gmail.com